IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Design Basics, LLC, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:17-cv-273 |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Ashford Homes, LLC, *et al.*, | : | Order Granting in Part and Denying in |
| | : | Part Motions for Summary Judgment |
| Defendants. | : | |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment
(Docs. 58, 59) and Defendants' Motion for Summary Judgment (Doc. 60). Plaintiffs assert that
Defendants copied and built homes using their copyrighted home designs. Defendants deny
copying Plaintiffs' designs and deny that their home designs are substantially similar to
Plaintiffs' designs. For the reasons that follow, the Court will **GRANT IN PART AND DENY
IN PART** Plaintiffs' Motion for Partial Summary Judgment and **GRANT IN PART AND
DENY IN PART** Defendants' Motion for Summary Judgment.

I.      BACKGROUND

A.      Factual History[1]

        1.      Plaintiffs

        Plaintiff Design Basics LLC ("Design Basics"), formerly known as Design Basics, Inc.

("DB Inc."), has been in the business of creating, marketing, publishing, and licensing the use of

architectural works since the early 1980's. Patrick Carmichael and Myles Sherman purchased

_____

[1] The following facts are derived from Defendants' Proposed Undisputed Facts (Doc. 60-1), Plaintiffs' Statement
of Undisputed Facts (Doc. 61), and the Responses thereto (Docs. 68-1, 73-1) unless otherwise specifically noted.

1

DB Inc. in 2009 as an investment opportunity. Carmichael and Sherman restructured DB Inc. into Design Basics. Design Basics owns the assets and intellectual property of DB Inc.

For over three decades, Design Basics and its predecessor, DB Inc., marketed its original custom and ready-made home plans for single and multi-family homes through plan catalogs, home building industry publications, brokerage marketing partners, client-specific publications, and the internet. Design Basics' customers license the home plans for marketing and construction purposes. Design Basics also customizes home plans for its builder customers and helps them market to potential home buyers.

Plaintiff Plan Pros, Inc. also creates and markets single and multi-family architectural work within the United States. Like Design Basics, Plan Pros markets its original works through plan catalogs, home building industry publications such as *Builder Magazine*, brokerage marketing partners, client-specific publications, and the internet, including but not limited to the website www.designbasics.com. (Cuozzo Dec., Doc. 59-2 at PageID 1064.)

The parties do not spell out the formal relationship, if any, between Design Basics and Plan Pros. However, both companies are based in Omaha, Nebraska, and they share at least one key employee. (*Id.* at PageID 1063.) Carl Cuozzo is identified as a "Senior Designer" of Design Basics and as the "President" of Plan Pros. (*Id.*) Additionally, as stated immediately above, Plan Pros posts its designs on Design Basics' website.

DB Inc., Design Basics, and Plan Pros have created over 2,600 designs collectively. DB Inc., on average, received over $4 million annually from licensing revenues for its original home designs between 1998 and 2005. DB Inc.'s and Design Basics' revenue fell well below $1 million annually beginning in calendar year 2009, which resulted in the company laying off 75% of its employees. Plaintiffs' precipitous decline in revenue was co-incident to the rise of the

1

internet, and the easy availability of its plans.  Theft of readily-available copyrighted works is believed to have become widespread in the home building industry.  DB Inc., Design Basics, and Plan Pros had filed more than 110 copyright infringement cases by July 2018.

The possibility of pursuing copyright litigation influenced Carmichael's and Sherman's decision to purchase DB Inc. in 2009.  Sherman and Carmichael invested in the company's infrastructure with a new database system, created new, ready-made house designs, increased marketing, continued to attend national home building expos, and started an internet blog. Design Basics continues to create and market new original home plans, but it has authored only approximately 350 new original architectural works that have been put into service since 2009.

Every work within Plaintiffs' residential house plan portfolios is registered with the U.S. Copyright Office before being marketed in any way.  Among Plaintiffs' registered works are the six designs at issue in this case (the "Copyrighted Works"): "Kirby Farm," "Crawford," "Carriage Hills," and "Rosebury" by Design Basics and "Blaylock" and "Akers" by Plan Pros. (Doc. 59-3 at PageID 1069 to Doc. 59-8 at PageID 1146.)  The Copyrighted Works—including both elevations and floor plans—have been displayed continuously on DB Inc.'s or Design Basics' website since at least the following dates:

A.  Kirby Farm:  January 29, 2000 to the present;

B.  Crawford:  March 23, 1998 to the present;

C.  Carriage Hills: June 14, 2000 to the present;

D.  Rosebury:  September 24, 1999 to the present;

E.  Blaylock:  April 24, 2003 to the present; and

F.  Akers:  June 23, 2003 to the present.

(Cuozzo Dec., Doc. 59-2 at PageID 1067–68.)

## 2. Defendants

### a. Jack Rupp and Ashford Homes, LLC

In 2002, Defendant Jack Rupp, a former sales representative and sales manager for Ryan Homes, sought financial backing to start Defendant Ashford Homes, LLC ("Ashford Homes"). Rupp was introduced by a third party to Carlos Todd, who had business experience in home construction. Todd and Rupp formed a partnership and began Ashford Homes. Rupp states that he had no involvement with Todd's other construction business. (Rupp Aff., Doc. 53 at PageID 728.) However, Ashford Homes shared office space, a corporate controller employee, and overhead expenses with the Todd Development Company and Todd Homes for several years. (Rupp Dep., Doc. 56 at PageID 843–48.) Ashford Homes and the Todd Development Company shared an address at 9650 Cincinnati-Columbus Road, Cincinnati, Ohio 45241 from June 2002 through December 2004. (*Id.* at PageID 843, 873–74.)

Likewise, Rupp attests that Todd was never an active participant in Ashford Homes. (Rupp Aff., Doc. 53 at PageID 728.) However, the initial Operating Agreement of Ashford Homes dated June 25, 2002 lists the Todd Development Company as a two-thirds owner of Ashford Homes and Jack Rupp as a one-third owner. (Doc. 59-13 at PageID 1180.) The Todd Development Company transferred its two-thirds ownership interest in Ashford Homes to Todd individually on December 31, 2004. (Doc. 59-14 at PageID 1181.) Plaintiffs point out that Ashford Homes touts the involvement of Todd on the company website, stating in relevant part as follows:

> The strength behind Ashford Homes is Carlos Todd, Jack Rupp, and Mike Hoff. Ashford's roots date back to the early 1970's when Carlos Todd started as a land developer in the Greater Cincinnati area. They have over 40 years of experience building some of Southwest Ohio's most sought after homes. They have developed many desirable communities, with numerous design and marketing awards to their credit. They have earned, along with Ashford's Home Team, an

1

enviable reputation for featuring open and innovative designs that are as affordable as they are appealing!

http://www.ashfordhomesohio.com/about_us.php.

Jack Rupp testified at his deposition that he developed the approximately forty plans that Ashford Homes markets to the public.  (Doc. 56 at PageID 854.)  He created the design plans after examining what other local and national builders were doing.  (*Id.* at PageID 852–54.)  He incorporated floor plans and design flow ideas from other designers.  (*Id.* at PageID 853.)  He told customers who brought in home design plans they found on the internet that he "can't build it exactly the way that it is" and that he "[had] to change it up."  (*Id.* at PageID 858.)  He understood that he had to "basically change [design plans] up 25 to 35 percent."  (*Id.* at PageID 860.)  He testified that he sometimes took two designs from other local builders and would blend them together taking some features from one design and some features from the other design.  (*Id.* at PageID 861–62.)  Regarding national builders, Rupp testified that he looked at "Builder Magazine Top 100 Builders."  (*Id.* at PageID 872.)  Rupp never purchased a license from another company for a home plan.  (*Id.* at PageID 863.)

Nonetheless, on April 28, 2014, Plaintiffs discovered what they considered to be infringing copies, or knockoff house designs, of the Kirby Farm, Crawford, Carriage Hills, Blaylock, and Akers designs on the website, www.ashfordhomesohio.com.  (Cuozzo Dec., Doc. 59-2 at PageID 1064.)  Later, during this litigation, Plaintiffs discovered what they consider to be an infringing copy, or knockoff house design, of the Rosebury design.  Copies of the relevant design plans can be found in the record as follows:

| Defendants' Design | PageID | Ashford Homes' Allegedly Infringing Design | Page ID |
|---|---|---|---|
| DB's Kirby Farm | Doc. 59-3 at 1069–1083 | Columbia | Doc. 48-7 at 275–276 |
| DB's Crawford | Doc. 59-4 at | Oakhurst | Doc. 48-7 at |

| | 1084–1103 | | 277–278 |
|---|---|---|---|
| DB's Carriage Hills | Doc. 59-5 at 1104–1119 | Manchester | Doc. 48-7 at 279–280 |
| DB's Rosebury | Doc. 59-6 at 1120–1136 | Glenwood | Doc.48-8 at 287–288 |
| Plan Pros's Blaylock | Doc. 59-7 at 1137–1143 | Avalon | Doc. 48-7 at 281–282 |
| Plan Pros's Akers | Doc. 59-8 at 1144–1146 | Sonoma and Sonoma II | Doc. 48-7 at 283–286 |

Ultimately, Plaintiffs discovered that Ashford Homes constructed forty-four houses between 2003 and 2017 which Plaintiffs allege infringe upon the Copyrighted Works. (Doc. 56 at PageID 894; Doc. 56-13 at PageID 1009.)

The Todd Development Company was a customer of Plaintiffs since 1989. Carlos Todd, on behalf of the Todd Development Company, ordered nineteen catalogs and purchased blueprints for four home designs from Plaintiffs.[2] (Foresman Dep., Doc. 52-1 at PageID 687, 712.) All of the Copyrighted Works at issue in this case, except for the Rosebury, were featured within one or more of the catalogs ordered and received by the Todd Development Company and received at its office at 9650 Cincinnati-Columbus Road, Cincinnati, Ohio 45241 between 1989 and 2014. (Doc. 59-10 at 1153–1155; Doc. 59-11 at PageID 1057–1164.) Rupp stated in his declaration that he never personally "received, reviewed, or read any of the material purchased or received by Mr. Todd or his companies from Design Basics Inc., Design Basics LLC, or Plan Pros, LLC." (Doc. 53 at PageID 728.) He testified at his deposition that he does not remember seeing any plan catalogs, nor a library or publications shelf, at the 9650 Cincinnati-Columbus Road office. (Doc. 56 at PageID 875.) He did not know that the Todd Development Company purchased plan catalogs from Design Basics. (*Id.* at PageID 873.)

---

[2] It also purchased licenses for four plan designs not at issue in this case.

Rupp denied copying a home design plan from DB Inc., Design Basics, or Plan Pros to create a new home design. (Rupp Aff., Doc. 53 at PageID 730.) Defendants have no documentation or information indicating that Ashford Homes ever received catalogs or design plans from them. (Foresman Dep., Doc. 52-1 at PageID 652–53.)

### b. Ashford Homes Tennessee LLC and Ashford Remodeling LLC

In 2006, Rupp, Todd, and Dell Profitt formed Defendant Ashford Homes Tennessee, LLC ("AH Tennessee"). They each owned one-third of the company, but Rupp stated that neither he nor Todd had any involvement with the operation of AH Tennessee. (Rupp Aff., Doc. 53 at PageID 728; Rupp Dep., Doc. 56 at PageID 835.) AH Tennessee shared a controller and receptionist with Ashford Homes and the Todd Development Company. (Rupp Dep., Doc. 56 at PageID 844–847.) However, it was based in Tennessee. (*Id.* at PageID 838.) AH Tennessee shut down in 2012 for lack of sales. (*Id.* at PageID 835.) AH Tennessee did not construct any homes using any of the Copyrighted Works. (Rupp Aff., Doc. 53 at PageID 729.) It also did not receive funds for the sale of any home sold or constructed by Ashford Homes. (*Id.*)

In 2010, Rupp and Mike Ward formed Defendant Ashford Remodeling LLC. Each own one-half of the company. (Rupp Dep., Doc. 56 at PageID 838.) Ashford Remodeling did not construct or sell a home using any of the Copyrighted Works. (Rupp Aff., Doc. 53 at PageID 729.) It also did not receive funds for the sale of any home sold or constructed by Ashford Homes. (*Id.*)

## B. Procedural Posture

On April 24, 2017, Plaintiffs Design Basics and Plan Pros filed a Complaint for Copyright Infringement against Defendants Ashford Homes; AH Tennessee; Ashford Remodeling; Carlos Todd Properties, LLC; Todd Homes, LLC; Todd Development Company,

Inc.; Jack A. Rupp; and James A. Martre. (Doc. 1.) Plaintiffs asserted four claims for non-willful copyright infringement in violation of 17 U.S.C. § 106, four claims for willful copyright infringement in violation of 17 U.S.C. § 106, and one claim for a violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202. (*Id.* at PageID 9–12.)

On May 25, 2017, Plaintiffs filed a Voluntary Dismissal without Prejudice as to James A. Martre only. (Doc. 19.) Thereafter, Ashford Homes, AH Tennessee, Ashford Remodeling, and Jack Rupp filed an Answer, (Doc. 27), while Carlos Todd Properties, LLC, Todd Homes, LLC, and Todd Development Company, Inc. filed a Motion to Dismiss, (Doc. 30). Plaintiffs did not file a response in opposition to the Motion to Dismiss, but instead dismissed with prejudice the claims against Carlos Todd Properties, LLC, Todd Homes, LLC, and Todd Development Company, Inc. pursuant to a Stipulated Order of Dismissal on August 21, 2017. (Doc. 34.) On November 1, 2017, the Westfield Insurance Company moved to intervene in the case, but the Court denied intervention on January 25, 2018. (Docs. 37, 42.)

On May 1, 2018, Plaintiffs filed a First Amended Complaint against Ashford Homes, AH Tennessee, Ashford Remodeling, and Jack Rupp. (Doc. 48.) Plaintiffs again assert four claims for non-willful copyright infringement in violation of 17 U.S.C. § 106, four claims for willful copyright infringement in violation of 17 U.S.C. § 106, and one claim for a violation of the DMCA, 17 U.S.C. § 1202. (*Id.* at PageID 228–232.)[3] On May 16, 2018, Defendants filed their Answer denying liability and asserting ten affirmative defenses. (Doc. 50.)[4]

---

[3] Specifically, Plaintiffs assert the following copyright infringement causes of action:

(1) non-willful infringement "by scanning, copying, and/or reproducing unauthorized copies thereof, in violation of 17 U.S.C. §106(1)[;]"

(2) non-willful infringement "publicly displaying, on their web site(s) and elsewhere, for purposes of advertising and marketing, unauthorized copies or derivatives thereof, in violation of 17 U.S.C. §106(5)[;]"

(3) non-willful infringement "by creating derivatives of Plaintiffs' works in the form of two dimensional plans and fully constructed residences, in violation of 17 U.S.C. §106(2)[;]"

(4) non-willful infringement "by advertising, marketing and/or selling one or more houses based upon copies or derivatives of said works, in violation of 17 U.S.C. §106(3)[;]"

(5) willful infringement "by scanning, copying, and/or reproducing unauthorized copies thereof, in violation of 17 U.S.C. §106(1)[;]"

(6) non-willful infringement "publicly displaying, on their web site(s) and elsewhere, for purposes of advertising and marketing, unauthorized copies or derivatives thereof, in violation of 17 U.S.C. §106(5)[;]"

(7) non-willful infringement "by creating derivatives of Plaintiffs' works in the form of two dimensional plans and fully constructed residences, in violation of 17 U.S.C. §106(2)[;]"

(8) non-willful infringement "by advertising, marketing and/or selling one or more houses based upon copies or derivatives of said works, in violation of 17 U.S.C. §106(3)[;]" and

(9) violation of the DMCA, 17 U.S.C. § 1202, by removing Plaintiffs' copyright management information ("CMI") and distributing copies or derivative works knowing such CMI had been removed without authorization.

(Doc. 48 at PageID 228–232.)

[4] Defendants pleaded the following affirmative defenses:

FIRST AFFIRMATIVE DEFENSE
Plaintiffs' First Amended Complaint fails to state a cause of action upon which relief can be granted.

SECOND AFFIRMATIVE DEFENSE
Plaintiffs have failed to join all necessary parties.

THIRD AFFIRMATIVE DEFENSE
Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

FOURTH AFFIRMATIVE DEFENSE
Defendants' actions do not constitute infringement of plaintiffs' alleged copyright.

FIFTH AFFIRMATIVE DEFENSE
Plaintiffs' claims are barred in whole or in part because plaintiffs do not have a valid copyright of some or all of the alleged work.

SIXTH AFFIRMATIVE DEFENSE
Plaintiffs' alleged infringed copyrights qualify as "fair use" as defined by law.

SEVENTH AFFIRMATIVE DEFENSE

1

Plaintiffs and Defendants both now move for summary judgment. (Docs. 58, 60.) The pending motions are fully briefed and ripe for adjudication.

## II.      STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to

---

Defendants' alleged infringing plans do not amount to substantial copy and are not substantially similar to plaintiffs' alleged copyrights.

EIGHTH AFFIRMATIVE DEFENSE
Plaintiffs' actions and assertions constitute misuse of copyrights as a matter of law.

NINTH AFFIRMATIVE DEFENSE
Plaintiffs' subject work at issue are in the public domain and therefore incapable of copyright protection.

TENTH AFFIRMATIVE DEFENSE
Defendants reserve the right to supplement their defenses as discovery progresses.

(Doc. 50 at PageID 298–299.)

determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Finally, when cross-motions for summary judgment have been filed, "the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

III.    **ANALYSIS**

The Copyright Act provides protection to copyright owners as follows:

Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

* * *

> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly . . . .

17 U.S.C. § 106.

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *ATC Distrib. Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005) (quoting *Feist Publ'ns*). "Copyright protection subsists . . . in original works of authorship." 17 U.S.C. § 102(a).

Prior to 1990, copyright protection for architectural designs was provided only by the section protecting technical drawings under the statutory category of "pictorial, graphic and sculptural works" or "PGS." 17 U.S.C. § 102(a)(5) (1989). PGS was defined to include "diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101 (1989). In 1990 with the passage of the Architectural Works Copyright Protection Act ("AWCPA"), copyright protection was extended explicitly to "architectural works." 17 U.S.C. § 102(a)(8). An architectural work is defined as follows:

> [T]he design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Copyright protection still extends to PGS after the AWCPA was enacted. 17 U.S.C. § 102(a)(5).

Therefore, prior to the AWCPA in 1990, architectural designs and drawings were protected, but the physical design of the architectural work was not protected. A builder could construct a house identical to a copyrighted design without infringing the copyright protecting

1

PGS, but the builder would violate the PGS protection if it copied the design and then used that copied design to construct a house. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 189 (2nd Cir. 2012). After the AWCPA in 1990, both the architectural designs and drawings, as well as the physical architectural work itself are protected. The distinction before and after the AWCPA is important in this case because DB Inc. obtained the Certificate of Registration on the Rosebury design in 1989. (Doc. 59-6 at PageID 1120.) The Rosebury design is not protected under the AWCPA.

**A.      Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on only three specific issues:

1.  Plaintiffs' *ownership* of valid copyrights in the 6 works at issue;

2.  Defendants' *access* to Plaintiffs' Copyrighted Works; and

3.  Seven of Defendants' affirmative defenses.

(Doc. 58 at PageID 1035.)

**1.      Whether Plaintiffs Have Established Ownership of Valid Copyrights**

To begin, Design Basics and Plan Pros move for summary judgment on the issue of whether they have established ownership of valid copyrights. That is, they seek summary judgment on the first prong of the *Fiest Publications* test for copyright infringement, which is a necessary element of their claims against Defendants. 499 U.S. at 361. "The first prong [of *Feist Publications*] tests the originality and non-functionality of the work, both of which are presumptively established by the copyright registration." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); *see also* 17 U.S.C. § 410(c).[5] That

_____

[5] The statute states as follows:

1

presumption applies here because Plaintiffs obtained Certificates of Registration for all of the

Copyrighted Works.  DB Inc. is listed as the author on the Certificates of Registration for Kirby

Farm, Crawford, Carriage Hills, and Rosebury designs, and Plan Pros is listed as the author on

the Certificates of Registration for Blaylock and Akers designs.  (Doc. 59-3 at PageID 1069 to

Doc. 59-8 at PageID 1146.)  The parties agree that the copyright ownership of DB Inc. passed by

operation of law to Design Basics.

However, Defendants challenge that the Copyrighted Works should not be protected

because they lack original design elements.  Only those components of a copyrighted work that

are original are entitled to the copyright protection.  *Feist Publ'ns*, 499 U.S. at 348.  Defendants

rely in part on their expert, Richard P. Kraly, an architect, who opined that both Plaintiffs' and

Defendants' designs are composed only of "elements deemed unprotected by the AWCPA."

(Doc. 54-1 at PageID 746.)  He concluded as follows:

> Simply stated, all residences considered herein are composed of standard
> features/materials/assemblies in existence and available to
> designers/builders/homeowners for several decades but incorporate current
> technology that comply with industry standards, building codes, manufacturer
> recommendations and client expectations as well as satisfy desired efficiency of
> construction plus cost containment for builders.

(*Id.* at 746.)

Plaintiffs respond that Defendants have misstated or misapplied the standard for

originality.  Originality requires "only that the work was independently created by the author (as

opposed to copied from other works), and that it possesses at least some minimal degree of

---

In any judicial proceedings the certificate of a registration made before or within five years after
first publication of the work shall constitute prima facie evidence of the validity of the copyright
and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a
registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).

creativity." *Feist Publ'ns*, 499 U.S. at 345. Originality does not require "novelty[,]" and the required level of creativity is "extremely low." *Id.* "[A] work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* Regarding architectural works such as houses, the regulations provide that "[s]tandard configurations of spaces, and individual features, such as windows, doors, and other staple building components" are not protected. 37 C.F.R. § 202.11(d)(2). Courts have further explained that "the use of porches, porticos, dormers, and bay windows, for example, is not protected, but the particular expression of those ideas and their combination in one house, may be protected." *Design Basics, LLC v. Petros Homes, Inc.*, 240 F. Supp. 3d 712, 718 (N.D. Ohio 2017) (quoting *Frank Betz Assocs., Inc. v. J.O. Clark Constr., LLC*, No. 3:08-cv-159, 2010 WL 4628203, at *5 (M.D. Tenn. Nov. 5, 2010)).

The Court finds that Defendants' argument misses the mark in that it conflates the two prongs of the *Feist Publications* test. Given that the Copyrighted Works are registered and presumptively original, Defendants' argument that there are no protectible elements in Design Basics' and Plan Pros' designs is better examined in the second *Feist Publications* prong. The Sixth Circuit has instructed that the second prong of the *Feist Publications* infringement test examines "whether any copying occurred (a factual matter) *and whether the portions of the work copied were entitled to copyright protection (a legal matter).*" *Lexmark Int'l*, 387 F.3d at 534 (emphasis added). Applying *Lexmark International*, a district court in the Northern District of Ohio recently determined in a home design copyright infringement case that the defendants' arguments that various elements of the home designs were not protected as original "because they were standard features or features dictated by building codes and other practical concerns"

was relevant to the second prong of the *Feist Publications* test, not the first prong. *Petros Homes*, 240 F. Supp. 3d at 719.

The *Petros Homes* court held that different Design Basics home design plans "possess the requisite minimal decree of creativity" for Design Basics to be granted partial summary judgment on the issue that it owns valid copyrights on its designs. *Id.* The court stated that the minimal element of creativity could be satisfied by the way the author "assembl[ed] even standard elements of architectural design." *Id.* A different court in the same district—though not addressing the ownership element directly—likewise concluded that "copyright law protects the arrangements of standard elements for which DB seeks protection: the overall form or the look and feel of the homes, the arrangement and composition of spaces and elements across the first and second floors of the houses, and program of the architectural work—i.e., the nature and quantity of the rooms and elements." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 302 F. Supp. 3d 933, 945 (N.D. Ohio 2018) (internal quotations and citations omitted). The court also said that "independent selection and arrangement of component parts into an overall, original design does not require that an architect create something like [Frank Lloyd Wright's] Fallingwater or the Guggenheim." *Id.* at 944 (internal quotation and citation omitted). This Court likewise concludes that Design Basics' home design plans in the Copyrighted Works possess the requisite degree of creativity for Plaintiffs to be granted summary judgment on the narrow basis that it owns valid copyrights.

## 2. Whether Defendants Had Access to Plaintiffs' Design

Design Basics and Plan Pros also seek summary judgment on the issue of Defendants' access to their home designs, another element necessary to proving their claims. The issue of access is relevant to the second *Feist Publications* prong for establishing a copyright

1

infringement claim, the "copying of constituent elements of the work that are original."  499 U.S. at 361.  A plaintiff can establish that copying occurred "by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar."  *Lexmark Int'l*, 387 F.3d at 534.  Plaintiffs assert that the Court should find as a matter of law that the Defendants had access to the Copyrighted Works, while Defendants assert that the Court should find as a matter of law that they did not have access to the Copyrighted Works.

"Access is essentially [viewing] or having a reasonable opportunity to [view] the plaintiff['s] work and thus having the opportunity to copy."  *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (internal quotation and citation omitted); *see also Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*, No. 3:08-CV-00159, 2010 WL 2253541, at *13 (M.D. Tenn. May 30, 2010) (same).  Proof of access requires more than "mere speculation or conjecture."  *Murray Hill Publ'ns*, 361 F.3d at 316.  The plaintiff must provide probative evidence that the defendant had a "reasonable possibility" to view plaintiff's work.  *Id.* (citation omitted).  However, the access element "is intended to be easily established in light of the inherent difficulty of proving actual copying."  *Frank Betz Assocs.*, 2010 WL 2253541, at *14 (going so far as to state that "it nonetheless appears fairly well established that all a plaintiff has to do to prove 'access' is to show that the plaintiff distributes its marketing materials far and wide such that virtually everyone has access to them").  Evidence that a third party, with whom both the plaintiff and defendant had contact, had possession of the copyrighted work has been found to be sufficient to establish access by the defendant.  *See Jones v. Blige*, 558 F.3d 485, 491 (6th Cir. 2009) (citation omitted); *Design Basics, L.L.C. v. DeShano Cos., Inc.*, No. 10-14419, 2012 WL 4321313, at *13 (E.D. Mich. Sept. 21, 2012).  Similarly,

evidence that the copyrighted work was widely distributed can be sufficient in proper circumstances. *King Records v. Bennett*, 438 F. Supp. 2d 812, 846 (M.D. Tenn. 2006). On the other hand, bare corporate receipt of design plans is not sufficient. *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15cv666, 2018 WL 1583103, at *18 (N.D. Ohio Mar. 30, 2018).

Plaintiffs assert that Jack Rupp and Ashford Homes had access to its Copyrighted Works because they were widely distributed and because the Todd Development Company ordered or received nineteen catalogs from Plaintiffs between 1989 and 2014. Each of the Copyrighted Works, except the Rosebury, was featured in at least one catalog received by Todd and the Todd Development Company. The catalogs were shipped to the office at the 9650 Cincinnati-Columbus Road address that Rupp and Ashford Homes shared with the Todd Development Company starting in 2002. Neither party offers evidence as to Todd's business practice after he received the catalogs, such as how long or where he kept the catalogs. Also, each of the six Copyrighted Works was available on the Design Basics website.

Rupp designed the Ashford Homes plans alleged to have infringed upon the Copyrighted Works. He testified that he based his home designs for Ashford Homes on the designs of other local and national builders, making only small design changes. However, Rupp denies he ever saw the Design Basics catalogs, or any design catalogs, in the shared office space. He also denies that Todd, a founder and two-thirds owner of Ashford Homes, participated in the operations of Ashford Homes, but the company touts Todd's experience as a builder and as a founder of the company on its website. The Court concludes there is a disputed issue of fact whether Jack Rupp and Ashford Homes had access to the Copyrighted Works. The Court will deny summary judgment to Design Basics and Plan Pros on this issue.

3.      **Whether Plaintiffs Are Entitled to Summary Judgment on Defendants' Affirmative Defenses**

Finally, Design Basics and Plan Pros seeks summary judgment on Defendants' First, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses.  Defendants concede that summary judgment is appropriate on the First and Sixth Affirmative Defenses.  (Doc. 68 at PageID 1493.)  The Court need analyze only the remaining disputed affirmative defenses.

In the Third Affirmative Defense, Defendants allege that Plaintiffs' claims are barred by the statute of limitations.  (Doc. 50 at PageID 298.)  The Copyright Act provides that a civil action must be "commenced within three years after the claim accrued," but it does not define when a claim accrues.  17 U.S.C. § 507(b).  In 2014, the Supreme Court instructed that a claim for copyright infringement accrues "at the time the wrong occurs" or "when an infringing act occurs."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).  However, the issue in *Petrella* was whether the laches doctrine applied to the Copyright Act's statute of limitations.  *Id.* at 667.  The Supreme Court stated that each act of infringement is a distinct harm such that each new infringing act starts a new limitations period.  *Id.* at 671; *see also Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007).  "[T]he statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the statutory period."  *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).

The Supreme Court specifically noted in *Petrella* that it had not passed on the question of whether a discovery rule applies to start the Copyright Act's statute of limitations.  572 U.S. at 670 n.4; *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods, LLC*, 137 S. Ct. 954, 962 (2017) (same).  The Sixth Circuit had held prior to *Petrella* that a discovery rule applied to the Copyright Act's statute of limitations.  "A cause of action accrues when a plaintiff

knows of the infringement *or is chargeable with such knowledge*." *Bridgeport Music*, 376 F.3d at 621 (emphasis added). Because the Supreme Court in *Petrella* did not intend to pass on the application of the discovery rule to the Copyright Act's limitations period, this Court still will apply the discovery rule. *See Mitchell v. Capitol Records, LLC*, 287 F. Supp. 3d 673, 677 (W.D. Ky. 2017) (applying the discovery rule to copyright cases after *Petrella*).

Plaintiffs allege in the First Amended Complaint that they first discovered that Defendants had purportedly infringed upon the Copyrighted Works on April 28, 2014 when they saw the allegedly infringing designs on the website www.ashfordhomesohio.com. (Doc. 48 at PageID 225; *see also* Foresman Dep., Doc. 52-1 at PageID 665.) Plaintiffs initiated this suit within three years of this date on April 24, 2017. Defendants, who have the burden of proof on their affirmative defenses, have not produced any evidence to establish that Plaintiffs discovered or should have discovered the alleged infringing designs before April 28, 2014. Accordingly, the Court will grant summary judgment to Plaintiffs on the Third Affirmative Defense.

In the Fourth and Seventh Affirmative Defenses, Defendants assert that they are not substantively liable for copyright infringement. (Doc. 50 at PageID 299.) Defendants assert in the Fourth Affirmative Defense that their actions "do not constitute infringement" and in the Seventh Affirmative Defense that plans "do not amount to substantial copy and are not substantially similar to plaintiffs' alleged copyrights." (*Id.*) These purported defenses address elements of copyright infringement upon which Plaintiffs will bear the burden of proof. Defendants erred in labeling these as affirmative defenses pursuant to Federal Rule of Civil Procedure 8(c). The Court will grant summary judgment to Plaintiffs on the Fourth and Seventh Affirmative Defenses only insofar as they are not affirmative defenses at all. The Court will

address whether substantial similarity and copyright infringement below in the analysis of Defendants' Motion for Summary Judgment.

In the Fifth Affirmative Defense, Defendants assert that Plaintiffs "do not have a valid copyright on some or all of the alleged work." (*Id.*) However, Defendants conceded in their Response to Plaintiffs' First Request for Production of Documents, that they have no documents supporting a defense that Plaintiffs do not own copyrights in the Copyrighted Works. (Doc. 59-9 at PageID 1151.) Moreover, the Court concluded above that Plaintiffs are entitled to summary judgment on the issue that they own valid copyrights as a matter of law. The Court will grant summary judgment to Plaintiffs on the Fifth Affirmative Defense.

In the Eighth Affirmative Defense, Defendants assert that Plaintiffs' actions "constitute misuse of copyright as a matter of law." (Doc. 50 at PageID 299.) The Sixth Circuit has not explicitly recognized or addressed the defense of copyright misuse. *Petros Homes*, 240 F. Supp. 3d at 720. The district court in *Petros Homes* described it as "an absolute bar on recovery for copyright plaintiffs who have attempted to extend their limited rights to 'property not covered by the . . . copyright.'" *Id.* (quoting *Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 972 (4th Cir. 1990)). It further explained the defense as follows:

> The trend toward recognizing the copyright misuse defense, moreover, is well-grounded in the basic objectives of copyright. At its core, copyright law seeks "to promote the dissemination of creative expression, and provide incentives for copyright owners to produce ... original works." *CBS Broad., Inc. v. EchoStar Communications Corp.,* 265 F.3d 1193, 1211 (11th Cir. 2001). While these goals are furthered by granting copyright holders limited monopolies over the original elements of their creative works, the very same goals may be severely undermined when copyright holders leverage their monopolies to control "areas outside of the monopolies." *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1026 (9th Cir. 2001). More to the point, where a copyright holder asserts rights in non-copyrightable materials, other individuals may be discouraged from integrating those non-copyrightable materials into their own original creative works. *See generally,* William F. Patry & Richard A. Posner, *Fair Use and Statutory Reform in the Wake of Eldred*, 92 Calif. L. Rev. 1639, 1654–59 (2004).

The reward for the copyright holder is unduly inflated while the creativity of other individuals is potentially stifled. In short, the basic goals of copyright are undermined.

Against this background, it is clear that the function of the copyright misuse defense amounts to more than merely penalizing "overclaiming" by copyright holders. *Id.* at 1658. Rather, the defense also encourages (or at least diminishes a deterrent for) other members of the public to engage in creative expression. For this reason, and in accordance with nearly all of the courts which have had occasion to address the issue, the Court recognizes copyright misuse as a viable defense to copyright infringement.

*Id.* (quoting *Home Design Servs. v. Park Square Enters.,* 2005 WL 1027370 at *12 (M.D. Fla., 2005)).

Rupp and Ashford Homes contend that Design Basics has or had a business model built on pursing claims against other home builders for copyright infringement, a purported misuse of copyright law. Paul Foresman, the vice president and director of business development for Design Basics, testified in April 2018 that he was aware of approximately 200 instances in which Design Basics had determined that another builder has infringed upon its plans. (Doc. 52-1 at PageID 559, 588–90.) Foresman estimated that Design Basics had instituted approximately 110 cases of copyright infringement. (*Id.* at PageID 596.) Until the fall of 2017, Design Basics compensated employees who discovered infringing designs if the company obtained a monetary recovery for the infringement in the amount of "three-quarters of 1 percent of the settlement after all expenses, including attorneys, had been paid." (*Id.* at PageID 669, 673.) Foresman received approximately $55,000 in extra compensation over several years. (*Id.* at PageID 673.) The *Petros Homes* court found that similar evidence "if true, could be construed by a jury to support the misuse of copyright defense." 240 F. Supp. 3d at 721.[6] However, the compensation program

---

[6] As Defendants point out, one court derisively referred to Design Basics' business practices as copyright trolling:

was terminated in the fall of 2017.  (Doc. 52-1 at PageID 669.)  Also, Foresman denied that he or anyone at Design Basics had a job duty to search for suspected infringements.  (*Id.* at PageID 590, 617–18.)

Additionally, Rupp and Ashford Homes contend that Plaintiffs' Copyrighted Works contain many standard elements that cannot be protected by the copyrights, and therefore Plaintiffs' copyright infringement claims are too broad.  This evidence will be discussed below in the analysis of Defendants' Motion for Summary Judgment.  It suffices to say here that the Court concludes that genuine issues remain in dispute whether there is a substantial similarity between the protected elements of Plaintiffs' Copyrighted Works and Defendants' allegedly infringing works.  The Court likewise finds that disputed questions of fact remain on the misuse

---

Design Basics' business model of trawling the Internet for intellectual property treasures is not unique. In recent years, opportunistic holders of copyrights, patents, and other intellectual property have developed unsavory reputations for "trolling," bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation.  Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation.

This business strategy is far removed from the goals of the Constitution's intellectual property clause to "promote the Progress of Science and useful Arts."  U.S. Const. art. I, § 8, cl. 8. Intellectual property trolls have attracted much attention and derision in scholarly literature and the mainstream media.  See, e.g., Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1108 (2015) ("The essence of trolling is that the plaintiff is more focused on the business of litigation than on selling a product or service or licensing their IP to third parties to sell a product or a service.  The paradigmatic troll plays a numbers game in which it targets hundreds or thousands of defendants, seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim."); see also David Segal, *Has Patent, Will Sue: An Alert to Corporate America*, N.Y. Times (July 13, 2013), http://www.nytimes.com/2013/07/14/business/has-patent-will-sue-an-alert-to-corporate-america.html; *441: When Patents Attack!*, This American Life (July 22, 2011), https://www.thisamericanlife.org/radio-archives/episode/441/when-patents-attack.

*Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017).

of copyright counterclaim.  The Court will deny summary judgment to Defendants on the Eighth

Affirmative Defense.

**B.      Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on all of claims asserted in the First Amended

Complaint.  (Doc. 60 at PageID 1184.)

**1.      Liability of AH Tennessee and Ashford Remodeling**

Defendants move for summary judgment on the claims against AH Tennessee and

Ashford Remodeling on the basis that there is no evidence that they infringed upon the

Copyrighted Works.  It is undisputed that Rupp designed and Ashford Homes constructed the

forty-four homes alleged to have infringed upon the Copyrighted Works.

Plaintiffs offer no evidence of contributory infringement or vicarious infringement

sufficient to impose liability on behalf of AH Tennessee or Ashford Remodeling.  The Sixth

Circuit has described contributory infringement and vicarious infringement as follows:

> Liability for contributory infringement is based on the defendant's relationship to
> the direct infringement.  *Ez–Tixz, Inc. v. Hit–Tix, Inc.,* 919 F.Supp. 728, 732–33
> (S.D.N.Y. 1996).  Contributory infringement occurs when one, "with knowledge
> of the infringing activity, induces, causes, or materially contributes to the
> infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists
> Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971).  A defendant can be held
> vicariously liable if he enjoys a direct financial benefit from the infringing activity
> and "has the right and ability to supervise" the infringing activity.  *Ellison v.
> Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) (internal quotation marks and
> citation omitted).

*Bridgeport Music*, 376 F.3d at 621.  There is no evidence that AH Tennessee or Ashford

Remodeling contributed to or supervised the construction of the forty-four allegedly infringing

homes.  It is undisputed that AH Tennessee and Ashford Remodeling did not obtain any financial

benefit from the construction or sale of the homes either.  Accordingly, the Court will grant

summary judgment to AH Tennessee and Ashford Remodeling on all claims.

1

## 2.     Liability of Rupp and Ashford Homes

### a.     Copyright Claims

The Court next turns to the central issue in this case: whether Rupp and Ashford Homes infringed upon the Copyrighted Works when they designed, advertised, and constructed homes using the Columbia, Oakhurst, Manchester, Glenwood, Avalon, and Sonoma designs.  As stated above, to prove copyright infringement, Plaintiffs must establish both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns*, 499 U.S. at 361 (1991).  The Court already has concluded that Plaintiffs are entitled to summary judgment on the first prong, ownership of valid copyrights.  The Court now must examine whether Plaintiff has submitted sufficient evidence for a reasonable jury to conclude that Rupp and Ashford Homes copied constituent elements of the Copyrights Works that are original.  This second prong examines "whether any copying occurred (a factual matter) *and* whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Lexmark Int'l*, 387 F.3d at 534.  Plaintiffs can establish that copying occurred by establishing that Rupp and Ashford Homes both "had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar." *Id.*

The Court determined above in regards to the access issue that there is a disputed question of fact whether Defendants Rupp and Ashford Homes had access to the Copyrighted Works.  The Court need not revisit that issue here.

The Court turns then to the disputed issue of whether Plaintiffs' Copyrighted Works and Defendants' designs are substantially similar.  Ordinarily, the Sixth Circuit evaluates the substantial similarity of all copyrighted works under a two-step framework:  "the first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the

second involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." *Tiseo Architects, Inc. v. B & B Pools Serv. & Supply Co.*, 495 F.3d 344, 348 (6th Cir. 2007) (quoting *Kohus v. Mariol,* 328 F.3d 848, 855 (6th Cir. 2003)). The AWCPA protects architectural works as including "the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101. Standard features are understood to include purely functional elements such as "doors, windows, fireplaces, the use of red brick on the exterior and so forth." *Frank Betz Assocs.*, 2010 WL 4628203, at *3. Because copyright protection for architectural works explicitly applies to the overall form plus the arrangement and composition of spaces, some district courts have found that it is not practical to separate out unprotected elements before conducting the substantial similarity analysis. A district court for the Eastern District of Michigan stated that "[t]here is no need to conduct a test of separability when considering the copyrightable nature of an architectural house plan as a whole." *DeShano Cos.*, 2012 WL 4321313, at *6. Likewise, the *Frank Betz Associates* court concluded that a "rigid two-step approach is inappropriate and impracticable" because "the designs will be, on the whole, protectable." 2010 WL 4628203, at *5–6.

Though the Court concurs that the separability analysis is difficult for architectural works, the Court feels constrained to follow the Sixth Circuit's *Tiseo Architects* opinion in which the two-step analysis was applied to a building design. *See Forrester Wehrle Homes*, 302 F. Supp. 3d at 941; *Petros Homes*, 2017 WL 2842783, at *2. Design Basics and Plan Pros assert through their expert, Matthew McNicholas, that they are not claiming copyright protection on "doors, roofs, and windows among other standard elements." (McNicholas Report, Doc. 66-1 at PageID 1333.) Instead, they seek protection for the "relationships of rooms or spaces to one

1

another as configured in the overall form." (*Id.*)  For specific example, McNicholas describes

the protected aspects of the Akers design in detail as set forth in this excerpt from his expert

report:

> The concept at the heart of the plan of The Akers centers on designing a modest home on one floor (not including basement) dedicated to entertaining guests, and whose spaces are flexible enough to meet the needs of the homeowner, be that from the first moment in the home or as life continues to evolve.  Filling out the idea for the plan, Plan Pros also addressed the needs of storage and retreat.  Plan Pros expressed the idea of the plan through the composition, arrangement, coordination, and selection of standard spaces and elements via the following methods:

> From the perspective of a guest, the sheltered front door is not just a welcome area, but with walls extending to either side of the entry and a roof overhead – which all shelter against wind and driving rain – it is a considerate space.  This thoughtfulness for waiting guests reinforces the entertainment value of this design decision.

> Upon entry, one is greeted to the front by the expansive view of the Great Room located at the end of the long Front Hall.  Drawn toward the view of the Great Room, the guest is then presented the formal Dining Room to one side.  Even though the Dining Room is placed in a non-standard way without exterior walls, Plan Pros reinforces formality within the room by the symmetrical arrangement columns framing the view of the chandelier and dining table.  From the Entry Hall the dining room table can be seen on axis below the chandelier, reinforcing the entertainment value of the arrangement.  Connectivity to the rest of the plan is further emphasized by arranging access at the side of the room connecting to the Great Room.  Access to the Kitchen is also provided directly across the hall, making a convenient connection to the food prep and eating areas.

> The plan also offers flexibility, with a bedroom directly adjacent to the Entry Hall but that lends itself and its adjacencies to an easy transformation, ultimately serving the needs or wants of the homeowner functioning just as easily as an Office or Den if so desired.

> Reinforcing how the design focuses on entertainment, a significant area of the plan is devoted to the Great Room – Breakfast Area – Kitchen connection.  The guest arrives at the Great Room directly, with a focal element in a fireplace that balances the rest of the adjacent entertainment spaces, adjacent to windows with transoms letting in as much light and views as possible.  The Great Room is placed in such as [sic] way as to foster interaction with the Kitchen and the Breakfast Area, which further connects to the exterior.

> * * * *

1

(Doc. 66-1 at PageID 1369–70, 1436.)  Likewise, Carl Cuozzo, the senior designer for Design

Basics, states that the protected elements include, among other things, "[t]he sizes and shapes of

the rooms, and their spatial relationships to each other;" "[t]he locations of and spatial

relationships between and among toilets, shower/tubs and lavatories in the bathrooms;" "the

locations of porches, entryways, patios and front and rear or patio doors;" and "[t]he 'look and

feel' of the plan/design, and the manner in which the traffic flows through the house."  (Doc. 59-

2 at PageID 1065.)

On the other hand, Rupp and Ashford Homes, relying on the expert report of Kraly, argue

that the Plaintiffs' house plan designs in the Copyrighted Works have no original, protected

elements.  Kraly contends that the elements of design in the Copyrighted Works are not protected

because they are composed of "standard features/materials/assemblies in existence and available

to designers/builders/homeowners for several decades but incorporate current technology that

comply with industry standards, building codes, manufacturer recommendations and client

expectations as well as satisfy desired efficiency of construction plus cost containment for

builders."  (Kraly Report, Doc. 54-1 at PageID 746–47.)  Regarding the Akers design plan, Kraly

contends that elements such as the exterior front stoop, entry foyer and closet, great room, and

kitchen are functionally required and therefore not protected by the copyright, and that having

the "[g]reat room in the rear of the plan . . . as the epicenter of activity connected to the adjacent

dining area and kitchen" is a standard space configuration and therefore not protected by

copyright.  (*Id.* at PageID 767.)  Kraly concludes that "[a]ny similarities between Design Basics

plans and Ashford Homes, LLC plans is attributed to standard features, industry standards,

building codes, manufacturer recommendations and client expectations."  (Kraly Aff., Doc. 54 at

PageID 732.)

However, Kraly's reasoning is problematic. It is so broad that no house design would qualify as an architectural work subject to copyright protection. "[C]aselaw has consistently concluded that the overall form of architectural plans can be protected." *Dorchen/Martin Assocs., Inc. v. Brook of Boyne City, Inc.*, No. 13-CV-10588, 2013 WL 5348627, at *6 (E.D. Mich. Sept. 24, 2013); *see also Compass Homes, Inc. v. Trinity Health Group, Ltd.*, No. 13-cv-647, 2016 WL 3406054, at *6 (S.D. Ohio June 21, 2016) ("It is well established that floor plans for a single family house are protectable."). "[T]he originality of an architectural work is in the 'overall look and feel' of the design." *Dorchen/Martin*, 2013 WL 5348627, at *7. "The house's perimeter, establishing dimension and shape—along with the juxtaposition and arrangement of interior walls, bedrooms, kitchens, bathrooms, windows, doors, laundry-rooms, porches, stairways, and corridors—produces a compilation of component parts that is original and unique." *DeShano Cos.*, 2012 WL 4321313, at *7; *see also Dorchen/Martin Assocs.*, 2013 WL 5248627, at *6 (stating that "the overall design and arrangement of those component parts is not functionally required"). At least two district courts have excluded Kraly's opinion that the Design Basics' home designs are not subject to any copyright protection. *Forrester Wehrle*, 302 F. Supp. 3d at 946 (calling Kraly's opinion an "impermissible and incorrect" legal conclusion); *Design Basic, LLC v. Petros Homes, Inc.*, No. 1:14-cv-1966, 2017 WL 2842783, at *7 (N.D. Ohio July 3, 2017) (excluding Kraly's opinion that plaintiff's copyrights are meaningless and of no value). This Court agrees with the reasoning of the *Forrester Wehrle* and *Petros Homes* courts and will not consider Kraly's testimony to the extent he concludes that there are no protectable elements in the Copyrighted Works.[7] There are protectible elements in the

---

[7] The Court is not excluding at this time Kraly's other opinions including his charts listing distinguishing features in each Allegedly Infringing Work as compared to its parallel Copyrighted Work.

Copyrighted Works and the Court must determine if Rupp and Ashford Homes have copied them.

"To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." *Forrester Wehrle Homes*, 302 F. Supp. 3d at 941 (quoting *Lennar Homes of Tex. Sales & Marketing, Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 933 (S.D. Tex. 2015)); *see also Kohus*, 328 F.3d at 856–57 (stating that substantially similar analysis is based on the judgment of the "intended audience[,]" usually the "ordinary lay observer"). "[T]he touchstone of the analysis is the overall similarities rather than the minute differences between the two works." *Compass Homes*, 2016 WL 3406054, at *8. Courts rarely grant summary judgment to defendants in copyright infringement actions because the substantial similarity analysis usually presents a close dispute of fact. *See Kohus*, 328 F.3d at 853; *Compass Homes*, 2016 WL 3406054, at *8; *DeShano*, 2012 WL 4321313, at *15.

Rupp and Ashford Homes assert that their design plans are not substantially similar to Plaintiffs' Copyrighted Works as a matter of law. Their expert, Kraly, identifies numerous differences between each Copyrighted Work and the corresponding allegedly infringing designs by Defendants. (Kraly Dep., Doc. 54-1 at PageID 769–774.) To use the Kirby Farms design as an example, Kraly points out the following differences between Kirby Farms and Columbia:

| Features | Design Basics' Kirby Farms | Ashford Homes' Columbia |
|---|---|---|
| Interior Size | 1,212 square feet | 1,314 square feet |
| Roof style and details | Gable-style roof form with three (3) reverse gables. One atop the garage, one atop the entry door and one atop the | Gable or hip-style roof form with two (2) reverse gables. One atop the garage and one atop the front bedroom |

| | front bedroom | |
|---|---|---|
| Windows | Double-hung | Double-hung or casement |
| Entrance porch | Arched opening with recessed door | Partially covered entry porch |
| Kitchen | Opposing L-shaped countertops | U-shaped configuration |
| Great room | Flat ceiling | Optional cathedral ceiling |

(*Id.* at 772.)

Conversely, Design Basics and Plan Pros submitted for the Court's review side-by-side comparisons of the layouts of the Kirby Farm and the Columbia and a graphic depicting the designs superimposed in different colors atop one another:



(Doc. 66-1 at PageID 1436; Doc. 67-1 at PageID 1456.)  A quick visual survey reveals that both designs feature garages in the right front corner; second bedrooms in the left front corner; master bedrooms in the left back corner; great rooms in the central back area with fireplaces on the back wall and access to the master bedrooms and breakfast areas; kitchens with breakfast areas in the right back corner; and entry foyers with direct access to the garage, second bedroom, a bathroom, a stairwell, and the great room.  (Doc. 67-1 at PageID 1456.)  The comparisons of the other Copyrighted Works to the corresponding design by Rupp and Ashford Homes yields similar results, though some sets of designs have more readily discernible differences than others.  Based on this evidence, the Court concludes a reasonable jury could conclude that there is substantial similarity between Plaintiffs' Copyrighted Works and the corresponding design plans by Rupp and Ashford Homes.  For all of these reasons, the Court will deny summary judgment to Rupp and Ashford Homes on the copyright infringement claims.

**b.    DMCA**

The DMCA provides in relevant part as follows:

(a) False copyright management information.--No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement--

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is false.

(b) Removal or alteration of copyright management information.--No person shall, without the authority of the copyright owner or the law--

(1) intentionally remove or alter any copyright management information,

(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been

removed or altered without authority of the copyright owner or the law, knowing,
or, with respect to civil remedies under section 1203, having reasonable grounds
to know, that it will induce, enable, facilitate, or conceal an infringement of any
right under this title.

17 U.S.C. § 1202. Copyright management information ("CMI") includes "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(3). "A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws." *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003). To establish a § 1202(b)(3) claim, the plaintiff must prove that the defendant "possessed actual knowledge of the unauthorized change to the copyright management information." *Id.* at 926.

"A cause of action under Section 1202 potentially lies whenever . . . [copyright management information] is falsified or removed, regardless of the form in which that information is conveyed." *Shell v. Lautenschlager*, No. 1:15-cv-1757, 2017 WL 4919206, at *9 (N.D. Ohio Oct. 31, 2017). However, it is important to note that "demonstrating copyright infringement does not in and of itself prove that a defendant removed CMI from a work." *Id.* Copying or re-drawing virtually identical designs, but not including the original CMI, is not the same as altering or removing the CMI from the original design. *Id.*

A plaintiff cannot prove a violation of the DCMA without first proving the ownership and access elements of a copyright infringement claim. *Forrester Wehrle Homes*, 2018 WL 1583103, at *2. The Court has concluded that Plaintiffs have established ownership of valid copyrights as a matter of law, but that genuine disputes of material fact remain on the issue of

whether Rupp and Ashford Homes had access to the Copyrighted Works. Further, Plaintiffs submitted evidence, without contradiction, that all of their home design plans advertised on the internet and in plan catalogs, including the Copyrighted Works, features their CMI. (Cuozzo Dec., Doc. 67 at PageID 1442; Doc. 67-2 at PageID 1463–1469.) The allegedly infringing home design plans offered by Rupp and Ashford Homes display Ashford Homes's CMI, not Plaintiffs' CMI. (Cuozzo Dec., Doc. 67 at PageID 1442; Doc. 67-3 at PageID 1470–1483.) The Court concluded above that genuine issues of material fact are disputed as to whether the Rupp and Ashford Homes plan designs are substantially similar to the Copyrighted Works. Genuine issues of material fact likewise are in dispute as to whether Rupp and Ashford Homes violated the DMCA by removing or changing the Plaintiffs' CMI on the design plans.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Docs. 58, 59) is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is granted to Plaintiffs on the issue of ownership of valid copyrights and on Defendants' First, Third, Fourth, Fifth, Sixth, and Seventh Affirmative Defenses.  Summary judgment is denied to Plaintiffs on the access to the Copyrighted Works issue and on Defendants' Eighth Affirmative Defense.

Additionally, Defendants' Motion for Summary Judgment (Doc. 60) is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is granted to Defendants Ashford Homes Tennessee, LLC and Ashford Remodeling, LLC on all claims asserted against them.  Summary judgment is denied to Defendants Ashford Homes, LLC and Jack A. Rupp.

**IT IS SO ORDERED.**

Dated this 18th day of December, 2018.

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge